UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**AUGIE J. BLOOMSTEIN,**                                     Chapter 7
    Debtor                                                          Case No. 09-11241-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Trustee's Objection to the exemption of earned but unpaid wages claimed by the Augie J. Bloomstein (the "Debtor"). The Trustee objected to the Debtor's claimed exemption in the earned but unpaid wages for several reasons, including 1) the grounds set forth in the Debtor's Motion to Amend Bankruptcy Schedule C in which the Debtor stated:

> [T]he Debtor's ability to successfully assert these exemptions may implicate certain Adversary Proceedings now pending against the DEBTOR [sic] by not only his personal Chapter 7 Trustee in this action . . . but also the Chapter 7 Trustee of his former business corporation, AB General Contractors, Inc. . . . - which proceedings have been consolidated - and in which both Trustees are seeking to object to the DEBTOR'S discharge on the basis of his failure to remit certain sums to the Estate for which the DEBTOR may now have offsetting credits by virtue of his exemptions[;]

2) his inability to obtain any information from the Debtor to establish whether the unpaid wage claim is a real asset or simply a theoretical construct for litigation purposes; and 3) his contention that the provisions of the Federal Consumer Credit Protection Act, 15 U.S.C.

1

§§ 1671-1677, which exclude a specified portion of take home pay in any one pay period of wage earners from garnishment, are inapplicable to the exemption scheme set forth in 11 U.S.C. § 522(b) of the Bankruptcy Code.

The Court conducted a hearing on September 21, 2010 at which time the parties argued their respective positions. Following the hearing, both parties submitted briefs on the issue of the applicability of 15 U.S.C. § 1673 as a source of an exemption in earned but unpaid wages. The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. Resolution of the issue involves only a question of law and the parties did not request an evidentiary hearing. Accordingly, the Court accepts the recitation of facts set forth in the parties' papers and those discernable from the record of proceedings in the case.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on February 19, 2009. The Debtor was the president and chairman of the board of AB General Contractors, Inc., which also filed a voluntary Chapter 7 case on February 19, 2009. The proof of claim deadline in the corporate case was June 15, 2009. On April 27, 2010, the Debtor filed a proof of claim in the case of AB General Contractors, Inc. in the sum of $15,750 for earned and unpaid wages.[1]

On May 5, 2010, the Court granted the "Debtor's Motion to Amend Bankruptcy

---

[1] The Court notes that Augie J. Bloomstein was not listed as a creditor of AB Contractors, Inc. on either Schedule E or F.

2

Schedule C" and "Debtor's Motion (1) to Amend Bankruptcy Schedule B and (2) to Further Amend Bankruptcy Schedule C," subject to the Trustee's right to object to the Debtor's claimed exemptions.[2] On his amended Schedule C, the Debtor claimed the Massachusetts exemptions and an exemption in "earned but unpaid wages" in the sum of $15,750 pursuant to 15 U.S.C. § 1673.

### III. DISCUSSION

As this Court recognized in In re Genzler, 426 B.R. 407, 418 (Bankr. D. Mass. 2010), Fed. R. Bankr. P. 4003(c), places the burden of proof on the objecting party to establish that an exemption is not properly claimed. This Court stated: "This rule reflects the Code provision making a debtor's properly listed exemptions presumptively valid. *See* 11 U.S.C. § 522( l)." Id. The Court added:

> If the objector introduces evidence effectively challenging the exemption, the burden shifts to the debtor to produce evidence in support of his claim. In re Toppi, 378 B.R. 9, 11 (Bankr. D. Me. 2007), *as amended* (Nov. 15, 2007). *See also* In re Roberts, 280 B.R. at 544-45 ("'If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper . . . the burden of persuasion, however, always remains with the objecting party.'")(quoting Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 (9th Cir.1999)).

In re Genzler, 426 B.R. at 418.

In this case, resolution of the Trustee's Objection turns on a question of law, namely

---

[2] At the time the Debtor filed his original schedules, he neither listed his unpaid wages as an asset on Schedule B nor claimed them as exempt on Schedule C. Additionally, he failed to list any interest in AB General Contractors, Inc. on Schedule B.

3

whether 15 U.S.C. § 1673 creates an exemption under 11 U.S.C. § 522(b). For the reasons set forth below, the Court concludes that 15 U.S.C. § 1673 restrains the seizure of wages but does not establish an exemption applicable to bankruptcy cases.

The Supreme Court in <u>Kokoszka v. Belford</u>, 417 U.S. 642 (1974), in dicta, explicitly stated:

> An examination of the legislative history of the Consumer Protection Act [sic] makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. *See, e.g.*, <u>Segal v. Rochelle</u>, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating 'an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption' and a consequent increase in personal bankruptcies. Noting that the evidence before the Committee 'clearly established a causal connection between harsh garnishment laws and high levels of personal bankruptcies,' the House Report concluded:
>
>> 'The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.' H.R.Rep.No.1040, 90th Cong., 1st Sess., 21 (1967).
>
> *See also* <u>id.</u>, at 7. In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act.
>
> The Court of Appeals held that the terms 'earnings' and 'disposable earnings,' as used in 15 U.S.C. §§ 1672, 1673, did not include a tax refund, but were limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.' 2 Cir., 479

> F.2d, at 997. This view is fully supported by the legislative history. There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. There is no indication, however, that Congress intended drastically to alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure. We therefore agree with the Court of Appeals that the Consumer Credit Protection Act does not restrict the right of the trustee to treat the income tax refund as property of the bankrupt's estate.

Kokoszka, 417 U.S. at 650-52 (footnotes omitted).

The Debtor urges the Court to find that the statements made by the Supreme Court are dicta and do not control the outcome of the case. The Court disagrees. While the language utilized by the Court in its determination that an income tax refund check was property of the estate and that section 1673 of the Consumer Credit Protection Act did not apply to the tax refund may have been dicta, the Supreme Court's analysis is, in this Court's view, dispositive of the issue.

The Debtor cites In re Jones, 318 B.R. 841 (Bankr. S.D. Ohio 2005), in support of his position. In that case, the court observed that the debtor exempted wages under Ohio Rev. Code § 2329.66(A)(17), adding:

> While some courts have used the Kokoszka decision to support the view that Congress did not intend § 1673 as a federal bankruptcy exemption, Ohio specifically rejected Congress's list of federal bankruptcy exemptions when the state opted out of the federal exemption scheme. As an opt out state, Ohio has the ability to enact its own exemptions even if they conflict with those established by Congress in the Bankruptcy Code. Storer, 58 F.3d at 1128-29. Consequently, the dicta in the Kokoszka decision has no bearing on whether Ohio intended to include § 1673 of the CCPA within its state exemption list nor does it prevent the garnishment protection within the CCPA from being adopted as a bankruptcy exemption in an opt-out state. *See*

> Forker v. Irish (In re Irish), 311 B.R. 63, 66-7 (8th Cir. BAP 2004) (noting that an opt-out state could adopt the CCPA as a state exemption based on garnishment protection statutes regardless of the Congressional purpose for the CCPA and Supreme Court's decision in Kokoszka); In re Robinson, 241 B.R. 447, 451 (9th Cir. BAP 1999) (holding that Oregon has plenary authority over its own law of exemptions and, consequently, the Supreme Court's conclusions regarding Congressional intent with the CCPA has no bearing on the Oregon legislature's intent when enacting its state garnishment statute); In re Urban, 262 B.R. 865, 869-70 (Bankr. D. Kan.2001) (holding that "[w]hether or not Congress intended to create such an exemption [in bankruptcy] sheds no light on whether the Kansas legislature sought to create an exemption when it borrowed . . . § 1673(a)'s language . . . .").

In re Jones, 318 B.R. at 846-47.

In In re Sanders, 69 B.R. 569 (Bankr. E.D. Mo. 1987), the court reasoned that the decision in Kokoszka did not warrant the conclusion that the restriction on garnishment set forth in the Consumer Credit Protection Act is not a federal exemption available to debtors in bankruptcy cases. It stated:

> To interpret Kokoszka as holding that title III is not an exemption under federal law at all, as courts recently have been doing, . . . is unwarranted. In the first place, if it is not an exemption law, it is difficult to say what is. Indeed, it appears to be a paradigm of an exemption law, given the traditional goals of exemption laws. Second, Kokoszka must be interpreted in light of its facts; so interpreted it merely means that income tax refunds are not 'earnings' within title III. Third, because Congress made title III preemptive of all state laws that were less protective of debtors, *see* 15 U.S.C. §§ 1673(c), 1675, 1677 (1976), many states amended their laws to conform to title III. If these state laws-which supplanted wage exemptions-are now held to be something less than exemptions, in line with recent court interpretations of Kokoszka, protection of debtors' wages will be lost in bankruptcy although state legislatures clearly had no such intent."

In re Sanders, 69 B.R. at 571 (quoting Vukowich, Debtors' Exemption Rights Under The Bankruptcy Reform Act, 58 N.C.L.Rev. 769, 791 n. 192 (1980)). Nevertheless, the court in

Sanders was not required to determine whether section 1673 created a federal bankruptcy exemption because the federal garnishment statute did not apply in Missouri. Sanders, 69 B.R. at 571.

In addition to the Supreme Court's decision in Kokoszka, the Trustee relies upon Smith v. Frazier, 421 B.R. 513 (S.D. Ill. 2009), and In re Riendeau, 293 B.R. 832 (D. Vt. 2002), *aff'd*, 336 F.3d 78 (2d Cir. 2003).[3] In Smith, the district court squarely confronted the issue that is now before this Court, namely whether the debtors can exempt unpaid wages from their bankruptcy estate based upon the Federal Wage Garnishment Act (i.e., 15 U.S.C. § 1673, which is part of the larger Consumer Credit Protection Act). In affirming the bankruptcy court, the district court stated:

---

[3] The Vermont trustee process statute at issue in Riendeau was modeled after and is the state counterpart of the Consumer Credit Protection Act, 15 U.S.C. §§ 1671-1677. The district court in that case stated:

> The federal bankruptcy exemptions available under 11 U.S.C. § 522 do not include those articulated under the CCPA. *See* 11 U.S.C. § 522. Moreover, the Supreme Court has indicated that the enactment of the federal garnishment limitation statute was intended to assist persons in efforts to avoid bankruptcy and not to alter drastically the delicate balance of a debtor's protections and obligations during a bankruptcy proceeding. Kokoszka v. Belford, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

293 B.R. at 836 n.1. The court added: "Taken as a whole, these provisions do not contemplate the process by which assets are assembled into a bankruptcy estate. The exclusive purpose of this statutory scheme is instead to limit the periodic garnishment of future wages after final judgment in a civil action." Id. at 837.

> Finding the Supreme Court's analysis in <u>Kokoszka</u> persuasive, the Vermont District Court affirmed the Bankruptcy Court's decision to disallow the exemption claimed by the debtor. The United States Court of Appeals for the Second Circuit affirmed. <u>In re Riendeau</u>, 336 F.3d 78 (2nd Cir. 2003).
>
> Having reviewed all the cases cited by the Smiths [the debtors] herein (including <u>In re Sanders</u>, 69 B.R. 569, a 1987 decision of the United States Bankruptcy Court for the Eastern District of Missouri), this Court finds merit in the rationale and result of both <u>Kokoszka</u> and <u>Riendeau</u>.
>
> Stated simply, once the Smiths sought bankruptcy protection, the Bankruptcy Code and applicable state and federal property exemption statutes governed their rights and remedies-not the limitation on garnishment of wages contained in 15 U.S.C. § 1673.

<u>Smith v. Frazier</u>, 421 B.R. at 518.

## IV. CONCLUSION

In view of the foregoing, the Court adopts the rationale of the courts in the Second Circuit and concludes that the Trustee sustained his burden of proof with respect to his objection to the Debtor's claim of exemption for unpaid wages. Accordingly, the Court shall enter an order sustaining the Trustee's Objection to the Debtor's claimed exemptions in earned and unpaid wages.

> By the Court,
>
> *[signature: Joan N. Feeney]*
>
> Joan N. Feeney
> United States Bankruptcy Judge

Dated: November 5, 2010
cc: Christopher Lee, Esq., Gordon N. Schultz, Esq.